UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ATLANTIC CAPES FISHERIES, INC. )<br>Plaintiff, )<br> )<br>v. )<br> ) C.A. No. 14-14701<br>40 CLAM CAGES, MORE OR LESS, in rem, )<br>F/V Maude Platt, Inc. as owner of the )<br>M/V SEAFOX )<br>TM Terra Fisheries, Inc. as owner of the )<br>F/V MISS MAEGAN, )<br>F/V (John Doe(s) and )<br>NANTUCKET SOUND SEAFOOO, LLC )<br>Defendants. ) | | |

**DEFENDANT NANTUCKET SOUND SEAFOOD'S MOTION TO DISSOLVE OR MODIFY COURT ORDER ISSUING WARRANT FOR ARREST**

The Defendant, Nantucket Sound Seafood, LLC ("NSS"), by its attorneys, Michael A. Zeytoonian, of Hutchings, Barsamian, Mandelcorn & Robinson, LLP, move this Court pursuant to Fed. R. Civ. P. 65(b)(4) and Rule C(6) of the Supplemental Rules for Admiralty or Maritime Claims, to Dissolve or Modify its Orders Authorizing a Warrant for Arrest dated December 23, 2014, the Warrant for Arrest granted by this Court dated December 23, 2014, and other Orders of the Court pertaining to said Warrant, based on the reasons stated below. Copies of the above-referenced Order Authorizing Arrest and Warrant of Arrest are annexed as a courtesy as Exhibit A.

The essence of the allegations in Plaintiff's Verified Complaint ("Complaint") and motion to arrest maritime property is the Defendants unlawfully possess approximately 40 "federal clam cages" that belong to the Plaintiff or one of the three other companies identified in the Complaint, namely Sea Watch International, Lamonica Fine Foods and Surfside Products.

1

Plaintiffs allege that said "possession" of these 40 Clam Cages by the Defendants is without any authorization.

1. Plaintiff also alleges that the three aforestated companies and the Plaintiff utilize a "Cage Exchange System" ("Exchange"). This is a mischaracterization of the way the process in this industry works as to imply that there is some sort of exclusive contractual agreement between these four companies to exclusively utilize this Exchange to facilitate the handling of cages that are used by the vessels, trucks and companies in the clam fishing industry to transfer and transport the clams amongst those who participate in the process if fishing for, selling, shipping and buying clams.

2. Plaintiff further alleges that the Defendants were given some formal "authorization" by the Plaintiff to participate in the Exchange and subsequently, that said "authorization" was revoked.

3. Plaintiff also alleges that the three aforementioned companies have authorized the Plaintiff to initiate this action on their collective behalf, but provides no factual evidence or documentation in support of said representation, or any procedural basis in support of Plaintiff's ability to bring an action on behalf of three other would be plaintiffs.

4. Plaintiff fails to allege in its Complaint that at least one of the Defendants, NSS, uses its own cages and that these NSS cages are also included as part of the informal Exchange referred to by Plaintiff. NSS owns 28 of these cages which are freely used in the Exchange, as stated in the affidavit of Allen Rencurrel ("Rencurrel Affidavit"), a copy of which is annexed as Exhibit B and as indicated by the documentation

showing the purchase of 14 of said cages by NSS, a copy of which is annexed as Exhibit C.

5. The informal Exchange allows those several businesses and entities that participate in the process of fishing for, transporting and conveying clams to do so in a faster and more efficient way. These cages are freely interchanged throughout the process by all those who participate, as stated in the Rencurrel Affidavit (see Exhibit B).

6. To explain how this exchange process works by example, when NSS purchases clams and picks up cages containing clams from one of the vessels, it takes the cages that contain clams and then leaves the same amount of empty cages with the vessel so that the vessel can go back out and fish again without having to wait for NSS to empty the clams from the cages and bring those cages back to the vessel. Those empty cages that go onto the vessel when the vessel goes back out to sea are then filled with more clams. When the vessel comes in and sells those clams to a company, the cages that NSS gave to the vessel could be picked up by that company, like the Plaintiff, and that company takes those cages that are filled with clams and leaves the same amount of empty cages for the process to continue without delay. While all of the participating companies, including NSS, own their own cages, the Exchange allows them to freely exchange the cages. So at any given time, the Plaintiff or one of the other companies may be in possession of cages that are owned by NSS, and NSS may be in possession of cages owned by one or more of the other companies. These possessions of the cages are temporary in nature as the cages are constantly changing hands. (See Exhibit B.)

7. Plaintiff alleges that on one occasion, in November, 2014, it requested and obtained from the Defendants 22 "Exchange" cages. A copy of the Bill of Lading dated November 21, 2014 reflecting this obtaining of 22 cages is annexed as Exhibit D. In fact, one of those 22 cages that the Plaintiff obtained was owned by NSS and has not been returned to NSS. That NSS cage, along with others, most likely continued to be used and interchanged in the Exchange and for that reason, there has been no need to NSS to assert its ownership and claim its cage back from whichever company may possess it at any time since it was obtained by the Plaintiff. (See Exhibit B.)

8. Plaintiff's attempt at this time to assert its "ownership" of the cages in order to deny NSS and others from participating freely in the informal exchange system practiced in this industry is a veiled attempt to obstruct NSS' ability to conduct business.

9. If each company that "owned" the cages claimed its own cages and did not allow the cages to be freely utilized, changing hands constantly in this Exchange, the system would not work and it would hinder the business in general. For that reason, Plaintiff's assertion of its right to the 40 Clam Cages allegedly owned by either Plaintiff or one of the three other companies is illogical and runs contrary to the way this business is conducted in this industry.

10. At no time has NSS claimed "ownership" of any of the cages that are freely and regularly interchanged as part of the Exchange and at no time has NSS attempted to exclusively possess any of the alleged 40 cages or any other cages. In fact, NSS has not attempted to exclusively possess the cages NSS owns. To do so would obstruct the free movement of the cages being exchanged within this industry and ultimately impair the ability of every entity in the industry to conduct business efficiently.

11. As such, the seizing of the 40 Clam Cages that are the subject of the Court's Order allowing a Warrant for their Arrest would do significant harm not only to NSS, but to every entity involved in the process of fishing for, buying, transporting and selling of clams. The assertion of "ownership" of these cages, by Plaintiff or any other business involved in this industry, including NSS, would only obstruct the informal cage exchange practice and cause harm to the entire industry and each of the business entities involved.

12. For the reasons stated above, DSS seeks the dissolution or modifying of the Orders Authorizing the Warrant for Arrest of the 40 Clam Cages and the staying of any action pursuant to the Warrant for Arrest by the dissolution or modification of the Warrant for Arrest.

13. By separate motion accompanying and related to the herein motion, the Defendant NSS also seeks a temporary restraining order pursuant to Fed. R. Civ. P. 65 (b)(1), restraining the Federal Marshal from executing said Warrant for Arrest of the 40 Clam Cages, in order to prevent irreparable injury, loss or damage to NSS as well as other business that may be impacted by the execution of said Warrant.

Accordingly, it is respectfully requested that the Court dissolve its Orders of December 23, 2014 authorizing the Warrant for the Arrest of the clam cages, as well as all other Court Orders of December related to said Warrant and stay any attempt to seize or attach said clam cages pending the outcome of this matter, or in the alternative, modify said Orders in such a way as not to result in irreparable injury to DSS and other business

entities that would be impacted by the execution of the Warrant, together with such other and further relief that the Court deems just and proper.

Respectfully submitted,

Dated: January 8, 2015

Nantucket Sound Seafood, LLC
By its attorney

/s/ Michael Zeytoonian
_____
Michael A. Zeytoonian
BBO # 558383
Hutchings, Barsamian, Mandelcorn & Robinson, LLP
110 Cedar Street, Suite 250
Wellesley Hills, MA  02481
Tel: 781-431-2231
Fax: 781-431-8726
mzeytoonian@hutchingsbarsamian.com