# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ATLANTIC CAPES FISHERIES, INC. )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>40 CLAM CAGES, MORE OR LESS, *in rem*, )<br>F/V Maude Platt, Inc. as owner of the )<br>M/V SEAFOX )<br>TM Terra Fisheries, Inc. as owner of the )<br>F/V MISS MAEGAN, )<br>F/V (John Doe) and )<br>NANTUCKET SOUND SEAFOOD, LLC )<br>    Defendants. ) | C.A. No. |

**MOTION FOR ORDER TO IMMEDIATELY SURRENDER CLAM CAGES**

Now comes the Plaintiff, Atlantic Capes Fisheries, Inc., by its attorney, and moves for an order requiring Nantucket Sound Seafood, LLC and its vertically integrated fishing vessel FV SEAFOX which owned by , F/V MAUDE PLATT, Inc. ,which itself is owned by Allen Rencurrel who is also a 50% owner of NSS, to immediately turn over all Atlantic Capes Fisheries, Inc. ("ACF") Seawatch International, Ltd. ("SWI"), Lamonica Fine Foods ("LFF"), and Surfside Products ("SSP") marked clam cages in its possession consistent with the attached Affidavits of SWI, LFF, and SSP. Additionally ACF, by its attorney moves that the order require cages which have recently been modified or altered by NSS to remove or obscure their original manufacturer markings be returned to ACF. ACF additionally moves that any cages not bearing identification marks be made available for inspection by ACF. ACF further requests an order to prevent NSS from further modifying clam cages in its possession, which it has apparently done subsequent to the Court's order to seize the 40 clam cages, more or less, described in the Verified Complaint in this action forthwith, for the reasons that are stated in the attached Verified Complaint.

On January 9 you instructed the two attorneys to draft an order. ACF's counsel drafted an order consistent with your direction, but opposing counsel disputes whether the draft order I prepared, see Attached Draft, complies with your verbal direction. Now therefore ACF by its attorney requests you to approve the Order.

Unfortunately, NSS through its counsel and principals refuses to return to ACF even the cages that are clearly marked as the property of others who seek their return.

In this action, ACF seeks recovery of clam cages belonging to it and certain other businesses that own similar clam cages, see attached Affidavits. As set forth in the Verified Complaint and the affidavit of Daniel Cohen accompanying this Motion, clam cages are used in a clam cage exchange system where they move from plant to trucker to boat, and then return to the plant. Each owner has cages manufactured with its identifying mark. Ownership of cages only changes when a plant ownership changes. Even the, original marks are not changed, but the new owner maintains the original mark to preserve integrity of the system. Owners will allow independent fishing vessels to utilize their cages as part of a business relationship, but the cages are supposed to be returned by the vessels to their owner when the clam supply relationship between boat and plant ceases. Because clam cages are standardized due to National Marine Fisheries Service regulations, and often business is shared between businesses, clam cages of owners may become mixed, but eventually they are returned to their owners. In short, the only way to purchase clam cages is to have them manufactured, which anyone is free to do, or to buy them from their actual owner, as reflected by the cage mark.

Neither NSS nor F/V Maude Platt has ever had cages manufactured. F/V Maude Platt asserts that 16 years ago it purchased cages from an individual who had been associated with

Chase Seafood. NSS claims no particular mark, and based on this, NSS asserts it can now possess cages belonging to anyone else in the clam industry, whether they are brand new or old based on this unproven and highly questionable transaction sixteen years ago. This is not that case. It is highly unlikely that Chase Seafood ever owned its own cages, see Cohen Affidavit, or that the unidentified individual had title to them to transfer them to Mr. Rencurrel.

NSS also claims it recently purchased 14 cages from Shellfish, Inc. The current inventory shows that NSS has 37 cages in its possession and on the SEA FOX. Of those, 26 are clearly marked as owned by Seawatch International, LTD, Lamonica Fine Foods and Surfside products, see inventory provided by NSS. Those entities want their cages returned; see Affidavits of Seawatch, Lamonica and Surfside filed herewith. All marked ages should be surrendered immediately for return to their rightful owners.

More problematic are 11 cages which have no markings, illegible markings, evidence of grinding and recent painting. Some of these were noted by Mr. Cohen to have no markings, faint markings or some metal replaced where the original markings would have been.-obvious because the cages are galvanized and the replacement metal was not, Cohen Affidavit. Since the hearing on January 9, 2015, NSS has been cutting and grinding portions of the cages and painting its initials, obstructing the original markings. This is not in the spirit of the Court's prior order. Cages that are not clearly identified by a manufacturing mark should be voluntarily placed in a location where they can be fully inspected and their true ownership determined. If these 11 cages are not voluntarily segregated by NSS until ownership is determined of these 11 cages, then the Court should order the 26 marked cages returned to their rightful and marked owners and the 11 unmarked cages seized by the Marshal until ownership is determined. It is clear that NSS does not legitimately possess any cages and, at best, paid truckers or vessel owners, such as Shellfish,

Inc., to be given possession of property of others, knowing it was not obtaining good, clear title to those cages. (Even if all of the cages it purports to have obtained / "purchased" from Shellfish, Inc. were unmarked, at least three of the fourteen had the marks of others on them. It is not industry practice to purchase from cage manufacturers unmarked cages.  It is not known whether the 11 unmarked cages that NSS claims to have obtained from Shellfish, Inc. were "unmarked" at the time NSS of obtaining them  Shellfish, Inc. or were subsequently modified by NSS to obscure and remove the original identifying markings.)

For these reasons and as set forth in the Verified Complaint and at hearing, the Court should order Nantucket Sound Seafood, LLC to immediately return to ACF all marked clam cages for return to their rightful owners and to segregate and not use and to preserve with the Marshal or the Substitute Custodian the "unmarked" cages for complete inspection and eventual return to their rightful owners once the rightful owners have been ascertained.

Respectfully submitted,
**Atlantic Capes Fisheries, Inc.**
By its attorneys

Dated: January 16, 2015

*/s/ **Stephen M. Ouellette***
Stephen M. Ouellette, Esquire
BBO No.:  543752
Ouellette Law Office
127 Eastern Ave., Suite 1
Gloucester, MA 01930
Tel:  (978) 281-7788
Fax:  (978) 281-4411
stephen.ouellette@fishlaw.com

# CERTIFICATION OF COUNSEL

Counsel for the Plaintiff, moving party certifies that in an attempt to resolve these issues I have spoken with counsel for the Defendant, Nantucket Sound Seafood, LLC and have been unable to resolve the issues surrounding the possession of clam cages in NSS's possession, either those clearly marked as belonging to parties identified in the pleadings as being those represented by Atlantic Capes Fisheries, Inc. In response to questions posed by NSS's counsel as to whether ACF represents those additional entities, ACF has obtained affidavits from Seawatch International, Lamonica Fine Food sand Surfside Products. ACF served its motion and accompanying documents on NSS's counsel on Friday to attempt to avoid the need to file witht eh Court, and the only response has been that NSS wants to continue to use said cages until they have had their own manufactured. This is unacceptable to ACF, resulting in filing of its motion.

Dated: January 19, 2015  /s/ *Stephen M. Ouellette*
Stephen M. Ouellette, Esquire

Certificate of Service
I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 19, 2015.
/s/ *Stephen M. Ouellette*
Stephen M. Ouellette