UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ATLANTIC CAPES FISHERIES, INC. | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-14701-DPW |
| | ) | |
| 40 CLAM CAGES, MORE OR LESS, *in rem,* | ) | |
| F/V Maude Platt, Inc. as owner of the | ) | |
| M/V SEAFOX | ) | |
| TM Terra Fisheries, Inc. as owner of the | ) | |
| F/V MISS MAEGAN, | ) | |
| F/V (John Doe) and | ) | |
| NANTUCKET SOUND SEAFOOD, LLC | ) | |
|     Defendants. | ) | |

## AFFIDAVIT OF DANIEL COHEN

I, Daniel Cohen, the President of Atlantic Capes Fisheries, Inc. ("ACF") do hereby state:

1. I am familiar with the clam industry in the Northeast and Mid-Atlantic, having been involved in it for approximately 40 years. I am second generation in the clam business. My father owned clam vessels from about 1968 to his death in 1974. I purchased my first clam boat in 1978. I started ACF in 1985. In 2008, as President of ACF, I oversaw the purchase of Galilean Seafood in Bristol, Rhode Island in March of 2008. Subsequently I purchased two other clam plants ---- Soffron Brothers from Ipswich, MA and Fairtide Shellfish of New Bedford, MA consolidating all the operations into the Galilean Seafood (ACF Clam Plant) Bristol, Rhode Island location in about 2010. Fairtide Shellfish primarily was a contract shucking plant for Seawatch International, Ltd. ("SWI"). ACF continues to contract shuck surf clams for SWI.

2. The F/V SEAFOX was fishing for Galilean in early 2014 using ACF supplied cages. In about February of 2014 the principal of the FV SEAFOX, Allen Rencurrel

      partnered with two other individuals to start a clam shucking plant, Nantucket Sound Shellfish, LLC ("NSS")

3. Initially NSS agreed to sell their products on agreed terms to ACF and in exchange ACF consented to allow NSS to use ACF supplied clam cages which had been provided by ACF to the FV SEAFOX.

4. It now appears that from February 2014 to November 2014 NSS accumulated additional cages which clearly were owned by SWI, Surfside Products ("SSP"), and Lamonica Fine Foods ("LFF") in addition to ACF cages.

5. To the best of my knowledge NSS never ordered, paid for, or took receipt of new cages from a cage manufacturer. Businesses have their individual identifier / marking permanently placed on each cage at time of manufacture. Recently, for example, ACF purchased 100 new clam cages, as part of a larger ordered placed with other of the clam cage owners who engage in their own Clam Cage Exchange Systems. This is to replace cages that have been destroyed, damaged or simply worn out.

6. I am familiar with Chase Seafood, which entered and exited the clam shucking business in Rhode Island in the late 1990's. Chase Seafood primarily shucked inshore surf clams and quahogs from "bag" boats. Only federal clams, harvested outside three miles are required to be landed by a vessel in a standard federally specified and regulated 3' x 4' x 5' clam cages. State of Rhode Island and Massachusetts clams (harvested in state waters within three miles of the coast) are traditionally landed in burlap / onion bags, hence "bag boats." To the best of my knowledge Chase Seafood never purchased its own clam cages from a manufacturer. Chase Seafood to the best of my knowledge did shuck federal surf clams in cages for a short period of time with

both the cages and surf clams provided to Chase Seafood by John Kelleher, who is an owner of Surfside Products ("SSP"). When Chase Seafood went out of business in about 1999 to the best of my knowledge all of the cages were returned to John Kelleher, or should have been returned to John Kelleher (now Surfside Products). If any of the cages provided by John Kelleher to Chase Seafood in 1999 were allegedly "sold by an individual" to Allen Rencurrel, the individual who conveyed these to Allen Rencurrel did not have title or ownership to sell them. Additionally, cages have a useful life of about ten years and it is not credible that these cages currently exist, or are useful, or that the alleged transaction with an "individual" actually took place in 1999.

7. To the best of my knowledge and now apparently confirmed by their own testimony, that from February 2014 to the present and its principals collected clam cages by paying truckers and vessel owners "storage fees" or other "payments" to allegedly "purchase" and therefore obtain SWI, LFF, SSP, and ACF cages which were in the possession of those truckers and vessel owners, but were not owned by those truckers and / or vessel owners, but instead were owned by SWI, LFF, SSP, and ACF. Any fee paid by NSS to obtain these cages from truckers or independent vessel owners does not constitute a transfer of ownership from the rightful marked owners who had the cages manufactured and who actually own the clam cages.

8. To the best of my knowledge Shellfish, Inc. never purchased new cages from a cage manufacturer. Shellfish, Inc. operates a New York Inshore Clam Vessel, which catches it had historically sold to SWI. SWI supplied SWI cages to Shellfish, Inc. To

the best of my knowledge the cages supplied to NSS by Shellfish, Inc. were SWI cages. To the best of my knowledge NSS should have known they were obtaining possession of SWI cages from Shellfish, Inc., but not their ownership, since Shellfish, Inc. could not convey ownership of SWI cages it did not own.

9. SWI, LFF, SSP, and ACF are all vertically integrated businesses which own and operate fishing vessels and clam plants. Additionally these plants purchase clams from independent vessels. In addition to using their clam cages on their own vessels and in their own "Clam Cage Exchange System" (Boat, Dock, Truck, Plant and back again) these plants, including ACF, supply clam cages to independent vessels, but the plants supply clam cages to independent vessels only when those vessels are fishing for their plants.

10. NSS also is a vertically integrated company with the owner of the F/V SEAFOX also owning, to the best of my knowledge, 50% of NSS.

11. Due to what I believed were deceptive business practices of NSS, on November 3, 2014 I provided written notice to NSS that ACF wanted to retrieve its cages and that NSS was no longer permitted to use our cages or those of the other companies, see attached, Exhibit 1.

12. On November 21, 2014 at about 8am ACF brought a truck and a fork lift to NSS. While there, I spoke to Vasco Camara, manager of NSS. He was aware of the November 3 letter and he consented to ACF picking up the cages.

13. The cages were marked with welded or engraved markings belonging to ACF, SWI, LFF, and / or SSP. The Bill of Lading from NSS filled out by Vasco Camara and

signed by me indicates "22 Seawatch System Cages" were picked up by Galilean Seafood (ACF Clam Plant).

14. Attached are photographs from November 21 of our picking up the clam cages. None of the cages had painted NSS markings, Exhibit 2.

15. On January 9 at about 8 am I went to NSS. They had nine cages in their yard. See attached photos, Collectively Exhibit 3. None had painted NSS on them. Cages were marked CMF, SP, and some had no markings. The cages I saw with no markings had been modified with the top galvanized rail replaced with black steel angle iron. None of the cages were painted with or otherwise marked NSS.

16. On January 9, 2015 I attended court with Stephen Ouellette before the Honorable Douglas P. Woodlock.

17. On January 10, 11, and 12 I tried to coordinate having an ACF employee present during the taking of the inventory ordered by Judge Woodlock, see attached email, Exhibit 3.

18. NSS refused to allow ACF employees to be present until 10:00am on January 13.

19. Chris Shriver, Galilean Seafood (ACF Clam Plant) manager, on behalf of ACF went to NSS on January 13, 2015 and inspected the 26 cages present at NSS, being the same cages NSS said were present on January 12.

20. In the photos provided by NSS from January 12, none of the cages have painted NSS.

21. On January 13, when Chris inspected the cages Chris observed for the first time a newly painted markings and new efforts to efface, grind off, and remove original markings. See his memorandum, Exhibit 4. Cages had newly painted / stenciled NSS markings with 2 cages having the original welded markings clearly ground off,

       another cage with markings ground off which appeared to be reading for stenciling, and one cage clearly of Seawatch (painted orange) with the top rail recently cut out defacing and removing the Seawatch logo.

22. On January 13, NSS informed ACF that NSS and FV SEAFOX had collectively 37 cages and there were no cages from NSS on the F/V MEAGAN and F/V JOHN DOE. NSS informed ACF the cages were marked as follows:

    a. SWI                                       11 cages

    b. ESS (Eastern Shore Seafood – now SWI)     2

    c. SP Surfside Products                        13

    d. <u>Allegedly unmarked</u>                      <u>11</u>

       Total                                      37

23. Since January 13, 2015 NSS has continued to refuse ACF permission to pick up the 26 cages in possession of NSS and FV SEAFOX with clear markings identifying ownership of ACF, SWI, LFF, and SSP.

24. Moreover, since January 13, 2015 NSS has continued to refuse to segregate and not use the 11 unmarked cages until their true ownership can be determined.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 16th DAY OF JANUARY, 2015.

                                              **/s/ Daniel Cohen**
                                              Daniel Cohen